Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 536 | DATE | 6/18/2004 |
| CASE TITLE | U.S. ex rel. Martinez v. Hinsley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner Martinez's Petition for a Writ of Habeas Corpus (doc. # 1-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Charles L. Hinsley, the warden of the Menard Correctional Center, is hereby substituted as the respondent. After careful consideration of the entire record, Petitioner Martinez's § 2254 petition for a writ of habeas corpus [1-1] is DENIED. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 21 2004 | 26 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| JHC | courtroom deputy's initials | 2004 JUN 18 PM 9:46 | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |
| | | FILED | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

JUN 2 1 2004

| UNITED STATES OF AMERICA ex rel. HIPPILITO MARTINEZ, | ) ) ) | |
|---|---|---|
| Petitioner, | ) ) | No. 01-C-536 |
| v. | ) ) ) | The Honorable William J. Hibbler, Judge Presiding. |
| CHARLES L. HINLSEY,[1] | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Hippilito Martinez filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Martinez claims his constitutional rights were violated through the prosecutor's misuse of peremptory challenges and use of an improper statement during the State's closing argument. Martinez also raises additional claims that are not cognizable and procedurally defaulted. For the following reasons, Martinez's petition is DENIED.

## I. Factual & Procedural History

Martinez does not challenge the statement of facts set forth in the Illinois Appellate Court opinion affirming the decision of the Circuit Court of Cook County. Thus, those facts are presumed correct for the purposes of this Court's review. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

---

[1]Martinez's petition named Roger D. Cowan, the former warden the Menard Correctional Center, as the respondent. Accordingly, Charles L. Hinsley, the current warden of that facility, is hereby substituted as the respondent. *See* Fed. R. Civ. P. 25 (d)(1); Rule 2 (a) of the Rules Governing *Habeas Corpus* 28 U.S.C. § 2254 Cases.

1



On December 29, 1994, a car with two occupants pulled along side Rashknie Walker. The passenger of the car fired multiple gunshots at Walker. After the shooting, the car fled the scene. Walker died from his wounds a few days later. The two occupants of the car were later determined to be Hippilito Martinez, the Petitioner, and Daniel Cruz. Eyewitnesses identified Martinez as the passenger and shooter. In March 1995, Martinez was arrested for the murder of Walker, and his trial was severed from the trial of Cruz. Following a jury trial in the Circuit Court of Cook County, Martinez was convicted on one count of first-degree murder. The trial court imposed a fifty-five year prison sentence.

Martinez appealed his conviction and sentence to the Appellate Court of Illinois, raising six issues: (1) the trial court erred in failing to grant a mistrial when the prosecution commented on Martinez's failure to testify; (2) the trial court erred in allowing into evidence mention of Martinez's gang membership and allowing the State to elicit gang-related expert testimony; (3) the trial court erred in denying Martinez's *Batson* claim; (4) the trial court gave improper jury instructions; (5) the trial court erred in denying Martinez's motion to quash based upon the lack of an arrest warrant or probable cause; and (6) the prosecution failed to prove guilt beyond a reasonable doubt. On September 18, 1998, the Illinois Appellate Court affirmed the judgment of the trial court. Martinez sought leave to appeal to the Illinois Supreme Court raising the same issues. The Illinois Supreme Court denied the petition for leave to appeal on December 2, 1998.

On June 8, 1999, Martinez filed a petition for post-conviction relief. In this petition, Martinez raised two issues: (1) ineffective assistance of counsel when counsel did not impeach the testimony of prosecution eyewitnesses Kenneth Walker and Leeotis Nicholson who misstated their location at the time of the crime; and (2) prosecutorial misconduct when the State commented

negatively on how Martinez did not testify in his own defense. The Circuit Court of Cook County rejected the petition for post-conviction relief on August 2, 1999. After the circuit court judgment, the appellate defender sought leave to withdraw as counsel. The appellate court permitted the appellate defender to withdraw and affirmed the dismissal of the post-conviction petition on September 29, 2000. Martinez did not file a petition for leave to appeal to the Illinois Supreme Court.

On May 7, 2001, Martinez filed his second amended petition for a writ of habeas corpus with this Court.[2] Martinez raises five claims: (1) the trial court committed reversible error when it denied Martinez's challenge to the prosecutor's use of peremptory challenges to have minority jurors excluded from the jury pool; (2) the trial court allowed the prosecution to engage in improper closing argument; (3) the trial court did not allow Martinez to impeach defense eyewitness Patricia Wilkins regarding an inconsistent statement; (4) the trial court erred in not granting Martinez's motion *in limine* to prevent the testimony of a prosecution expert on gangs to explain motive; and (5) the trial court erred when it did not allow Martinez to perfect the impeachment of prosecution witnesses Kenneth Walker and Leeotis Nicholson.

## II. Standard of Review

Martinez filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, which governs the granting of a writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). Under the AEDPA, a petitioner is entitled

---

[2]The Court allowed Martinez to amend his petition twice after Martinez failed to comply with the rules of filing a petition for a writ of habeas corpus.

to a writ of habeas corpus only if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth by the Supreme Court" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405-06. A state court decision is an "unreasonable application" of federal law if the state court identified the correct legal rule, but unreasonably applied it to the facts of the case. *Id.*; *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir. 2001). In order for a state court decision to be considered unreasonable under this standard it must be more than incorrect; it must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway*, 302 F.3d at 762.

In conducting a habeas review, courts are limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Generally, federal courts do not review state evidentiary questions in habeas corpus proceedings unless the ruling denied a defendant a fundamentally fair trial. *Gross v. Greer*, 773 F.2d 116 (7th Cir. 1985) (quoting *United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974)); *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir. 1989).

### III. Analysis

#### A. Noncognizable Claim

One of Martinez's claims for habeas relief is based upon the trial court's denial of his motion *in limine* to prevent testimony on motive from an expert on Chicago gangs. This claim is not

4

cognizable on habeas review as it raises only a state evidentiary issue, not a constitutional issue. Although Martinez argues that there was no extrinsic evidence introduced at trial that the shooting related to gang activity, Illinois courts allow gang-related evidence to show motive for an otherwise inexplicable act. *See People v. Wright*, 294 Ill. App. 3d 606, 614, 691 N.E.2d 94, 100 (1998) (collecting cases). In addition, a trial court's decision to admit gang evidence will not be overturned on appeal absent a clear abuse of discretion. *People v. Colon*, 162 Ill. 2d 23, 30, 642 N.E.2d 118, 121 (1994) (citing *People v. Gonzalez*, 142 Ill. 2d 481, 489-90, 568 N.E.2d 864, 867-68 (1991)). Thus, the state's evidentiary ruling on the motion *in limine*, and the appellate court's affirmation of it, was not erroneous, and Martinez was not denied a fundamentally fair trial by the admission of the gang-related evidence. Therefore, this claim fails to raise a constitutional issue and is noncognizable in habeas proceedings.

## B. Procedural Default

Next, the Court must determine if Martinez's claims are procedurally defaulted. *Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002). In order to raise a constitutional challenge to a state court conviction and sentence in a federal habeas corpus petition, the petitioner must have fully and adequately presented the challenge to the proper state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy this requirement, a petitioner must fairly present to the state tribunal both the operative facts and legal principles that control each claim. *See Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). A claim is procedurally defaulted when a habeas petitioner fails to pursue all appeals required by state law or fails to fully and fairly present his federal claims in state court. *See Boerckel*, 526 U.S. at 845; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). *See also Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993) (claim is procedurally defaulted when petitioner fails

to present claim to Illinois Appellate Court). A petitioner's claims are also procedurally defaulted when a state court relied upon an adequate and independent state procedural ground as the basis for its decision. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002).

Martinez procedurally defaulted on two of his claims. The first alleges that the trial court erred in not allowing the defense to perfect the impeachment of two prosecution witnesses, Walker and Nicholson. Martinez raised this issue in a post-conviction motion, which he appealed to the Illinois Appellate Court. However, Martinez failed to appeal the issue to the Illinois Supreme Court. Therefore, Martinez did not fully and adequately present his claim to the highest state court, and the claim is procedurally defaulted. In his second defaulted claim, Martinez alleges that the trial court erred in not allowing the defense to impeach its own witness, Wilkins. This petition is the first time Martinez has raised this issue. Therefore, this claim is also procedurally defaulted. *See Jenkins*, 8 F.3d at 507.

A procedural default can be overcome if the petitioner shows good cause for the default and actual prejudice, or demonstrates that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Martinez's petition is silent on these issues, and the Court finds no evidence of cause, prejudice or a miscarriage of justice. Thus, Martinez cannot overcome his procedural defaults.

C.  **Merits Discussion**

1.  *Batson* **Claim**

The first claim properly preserved for review is Martinez's *Batson* claim. Martinez alleges that the prosecutor improperly used peremptory challenges to remove minority jurors from the jury

6

pool in violation of Martinez's rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), which held that the Equal Protection Clause forbids the prosecutor from challenging potential jurors solely on account of their race. Martinez properly raised this claim in his direct appeal and in his petition for leave to appeal to the Illinois Supreme Court.

To establish a *prima facie* showing of purposeful discrimination in jury selection under *Batson*, "the objecting party must demonstrate: (1) that he is a member of a cognizable racial group; (2) that the government used a peremptory challenge to remove from the venire a member of a cognizable racial group; and (3) that the facts and any other relevant circumstances raise an inference that the opposing party used the peremptory challenge to exclude the venireperson on account of that person's race." *U.S. v. Cooper*, 19 F.3d 1154, 1159 (7th Cir. 1994). In *Batson*, the Supreme Court stated that the relevant circumstances include, but are not limited to: (1) the pattern of strikes against venirepersons comprised of the protected class; and (2) the prosecutor's questions and statements during *voir dire* and in exercising the challenges. *Batson*, 476 U.S. at 97. The Illinois Supreme Court has added the following to the list of relevant circumstances to consider: (1) the disproportionate use of peremptory challenges against members of the protected class; (2) the level of representation, with respect to the protected class, in the venire as compared to that of the jury; (3) whether the excluded members of the protected class were a heterogeneous group sharing only membership in the protected class as their only common characteristic; and (4) whether the witnesses are also members of the protected class. *People v. Hudson*, 195 Ill. 2d 117, 128, 745 N.E.2d 1246, 1253 (2001).

The burden is on the defendant who alleges discrimination in jury selection to prove the existence of purposeful discrimination. *Batson*, 476 U.S. at 93. In this case, Martinez is Hispanic,

a cognizable racial group, and the government did use peremptory challenges to remove from the venire members of a cognizable racial group. The prosecution used four of its five peremptory challenges to exclude three African-Americans and one Hispanic from the jury pool, three of whom were women. The fifth peremptory challenge was used against a white woman. A *Batson* violation may occur when members of a racial group other than the defendant's are excluded. *Powers v. Ohio*, 499 U.S. 400 (1991). Under *Cooper*, the remaining element of the *prima facie* case that Martinez must show in order to be entitled to a *Batson* hearing is whether the relevant circumstances raise an inference that the prosecution improperly used its peremptory challenges to exclude the venirepersons on account of their race.

In this case, the parties did not preserve the evidence on the total composition of the jury pool or the resulting jury. The trial judge conducted the entire *voir dire*, and neither party alleges that the prosecution made any statements or questions during its use of peremptory challenges. The Illinois Appellate Court, however, did not reject Martinez's *Batson* claim for lack of a complete record, nor did the court remand to the trial court for a *Batson* hearing. Rather, the appellate court conducted a substantive analysis of whether the relevant circumstances in the case raised an inference of intentional discrimination. Due to the incomplete record, however, the appellate court could not determine whether the government disproportionately used its peremptory challenges against members of the protected class, or the level of representation of the protected class in the venire as compared to that of the jury. Nor were there any statements or questions made by the prosecutor that the appellate court could consider because the *voir dire* was conducted by the trial court.

As to the remaining relevant circumstances, the appellate court found that the excluded members of the protected class were not a heterogeneous group sharing only membership in the

protected class as their only common characteristic. The excluded venirepersons did not share membership in the same protected class. Out of five peremptory challenges, three were African-American, one was Hispanic, and one was white; and four out of the five were women. The appellate court held that the trial court record indicated that the excluded venirepersons shared more than gender and race as a common trait. They also shared other characteristics that could appropriately be the basis for a peremptory challenge. In addition, although the stricken venirepersons were members of a protected class, the appellate court did not find that there was a pattern of strikes against venirepersons who were members of a protected class. Therefore, the appellate court found that the remaining relevant circumstances did not raise an inference that the prosecution improperly used its peremptory challenges to exclude venirepersons on account of their race. This Court agrees and finds that Martinez's constitutional rights were not violated when the appellate court found that he had not established a *prima facie* case of discrimination without remanding the issue for an evidentiary hearing.

The Seventh Circuit has held that to establish a *prima facie* case of purposeful discrimination under *Batson*, the defendant "must do more than merely point to the fact that the government excluded two black venirepersons by using peremptory challenges. [The defendant] must point to facts and circumstances raising an inference that the potential jurors were excluded because of race. Otherwise, every peremptory challenge used to exclude any cognizable minority from a petit jury would require a *Batson*-type hearing." *Cooper*, 19 F.3d at 1159-60. Martinez, however, has "merely point[ed] to the fact" of the excluded venirepersons' race, and has not pointed to facts and circumstances raising an inference that the potential jurors were excluded because of race.

Even the fact that four out of five peremptory challenges were used against members of a

9

protected racial group does not raise an inference of discrimination by itself. The Seventh Circuit has held that "a pattern of strikes can be demonstrated by the manner in which a party uses its strikes as compared to its total strikes or to the total number of members of the ... [protected] group." *U.S. v. Brisk*, 171 F.3d 514, 523 (7th Cir. 1999) (citing *McCain v. Gramley*, 96 F.3d 288, 291-92 (7th Cir. 1996)). In *Brisk*, the defendant argued that the government's use of four of its six peremptory challenges to remove women from the venire constituted a pattern of strikes against women. *Brisk*, 171 F.3d at 523. The Seventh Circuit, however, noted that the venire consisted of eighteen women and thirteen men, and, thus, the government neither used a significant number of its total strikes to remove women, nor did it remove a significant number of the women on the venire. *Id.* The court held that "the fact that the government used four peremptory challenges to remove women from the venire, without more, simply does not raise an inference of intentional discrimination." *Id. See also United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997) (stating that the mere fact that the prosecutor used his peremptory challenges to exclude two African-Americans, without more, is insufficient to raise an inference of discrimination).

In another example, the Seventh Circuit upheld the Appellate Court of Illinois' and the district court's holding that a habeas petitioner was not entitled to a hearing as he failed to make out a *prima facie* case of race discrimination under *Batson*. *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000). In that case, as in Martinez's case, the appellate court was unable to discern the race of the jury or of the other excluded venire members because the petitioner failed to preserve the record of the racial composition of the venire pool. *Id.* at 901. The state appellate court and the district court held that the prosecutor's use of two of its peremptory challenges to exclude African-American women from the jury failed to establish an inference of discrimination under

*Batson* because to do so the petitioner needed to do more than simply point to the fact that the State excluded an African-American venire person when using a peremptory challenge. *Anderson*, 227 F.3d at 901.

Instead, "the defendant must have shown that, when considering all the relevant circumstances, such as a pattern of strikes or the questions of the prosecutor, there was an inference of intentional discrimination." *Id.* at 901-02. The petitioner in that case, like Martinez, did not provide any other "relevant circumstances" to inform the Court whether the prosecutor used the peremptory challenges in a discriminatory manner. *Id.* In fact, "even if a 'pattern' could be said to exist, that fact is not dispositive. Courts must look to the totality of the circumstances, including the final make-up of the jury and the questions asked by the party." *McCain*, 96 F.3d at 292 (no pattern of strikes found where prosecutor used two of his five strikes on black venirepersons but the final jury consisted of ten whites and two blacks, the same racial proportion as the total venire panel). Therefore, in this case, as in *Anderson* and *McCain*, the Appellate Court of Illinois' denial of a *Batson* hearing was not contrary to or an unreasonable application of Supreme Court precedent, and Martinez has not made a substantial showing of the denial of a constitutional right.

### 2. Improper Closing Arguments

Martinez's second properly preserved claim is his allegation that the prosecution engaged in improper closing argument. Martinez argues that the prosecution's statement, "they didn't have anything to hide. They took the stand," while looking directly at Martinez during closing argument, violated his constitutional rights. Martinez properly raised this claim in his direct appeal and in his petition for leave to appeal to the Illinois Supreme Court.

"[T]he Fifth Amendment . . . in its bearing on the States by reason of the Fourteenth

11

Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). The right against self-incrimination is violated only when "1) it was the prosecutor's manifest intention to refer to the defendant's silence, or 2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence." *Rodriguez v. Peters*, 63 F.3d 546, 561 (7th Cir. 1995) (internal citations omitted).

In this case, the appellate court determined that the prosecutor's comment was not improper because it was an invited response to the earlier closing arguments of the defense attorney, who contended that the prosecution's witnesses were not credible. In *United States v. DiCaro*, 852 F.2d 259, 263 (7th Cir. 1988), the Seventh Circuit held that because "the essence of the defendant's theory was that the government's witnesses were not reliable, the prosecutor was entitled to imply that the failure of the defense to present available evidence (other than the defendant's testimony) in opposition to the government's witnesses supports a conclusion that the government's witnesses are reliable." In the instant case, the prosecution was responding to Martinez's attorney's argument that the government witnesses were not reliable, and was primarily seeking to counter the defense's criticism of the prosecution's witnesses.

Furthermore, Illinois law permits the State to compare the testimony of its own witnesses with the lack of contradictory evidence from the defense. *Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997). The Seventh Circuit has held that this law is not "contrary to" or "an unreasonable application of" Supreme Court precedent because the Supreme Court has not addressed a prosecutor's indirect references to a defendant's failure to testify. *Id.* at 106-07. *See also Freeman v. Lane*, 962 F.2d 1252, 1260 (7th Cir. 1992) ("Comments by the prosecutor on the state of the

evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance"). In *Griffin*, the Supreme Court only addressed a prosecutor's direct references to a defendant's failure to testify. 380 U.S. at 615.

In addition, the Seventh Circuit holds that a reference to unrebutted or uncontested testimony is not improper where police officers or witnesses other than the defendant could have, but do not, contradict the government's proof. *U.S. v. Harris*, 271 F.3d 690, 701-02 (7th Cir. 2001) (internal citations omitted). As in *Harris*, the crime at issue in this case was observed by several eyewitnesses: prosecution witnesses, Kenneth Walker and Leeotis Nicholson, and defense witness, Patricia Wilkins. The fact that their testimony corroborated the government's theory does not alter the fact that these witnesses could have rebutted the government's theory.

Finally, despite the indirect reference to Martinez's silence, that the other witnesses "didn't have anything to hide. They took the stand," the prosecutor's comments did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986). As in *Darden*, the weight of the evidence against Martinez was heavy: the "overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges," reduced the likelihood that the jury's decision was influenced by the argument. *Id.* at 182. In addition, as in *Darden*, the trial court instructed the jury before and after closing arguments that what the lawyers say during the arguments is not evidence and should not be considered by the jury as evidence. Therefore, Martinez's constitutional right against self-incrimination was not violated, and the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent. Martinez's claim thus does not warrant habeas relief.

## IV. Conclusion

For the above reasons, Martinez's § 2254 petition is denied.

IT IS SO ORDERED.

Dated: 6/18/04

William J. Hibbler, District Judge